UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KASHON SCOTT,

       Petitioner,

v.                        Case No: 2:16-cv-127-FtM-29MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS,

       Respondent.[1]

_____

**OPINION AND ORDER**

This matter comes before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Kashon Scott ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed February 8, 2016). Petitioner, proceeding through counsel, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Lee County, Florida for aggravated manslaughter of a child and aggravated child abuse. Id. Respondent filed a response to the petition (Doc. 18). Petitioner filed a reply (Doc. 23), and the matter is now ripe for review.

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the petition is resolved on the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I. Background

On June 21, 2007, the State of Florida charged Petitioner by information with aggravated manslaughter of a child under the age of eighteen, in violation of Florida Statute § 782.07(3) (count one) and aggravated child abuse, in violation of Florida Statute § 827.03(2) (count two) (Ex. 1).[2] A jury found Petitioner guilty as charged, and the trial court sentenced him to consecutive terms of thirty years in prison on each count (Ex. 2; Ex. 3; Ex. 24). Florida's Second District Court of Appeal affirmed *per curiam* (Ex. 7); Scott v. State, 44 So. 3d 590 (Fla. 2d DCA 2010).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") on October 19, 2011 (Ex. 9). He filed an amended motion on January 18, 2012 (Ex. 10). The post-conviction court

---

[2] Citations to exhibits are to those filed by Respondent on August 4, 2017 (Doc. 26). Citations to the trial transcript, located in Exhibit 24, will be cited as (T. at ___).

summarily denied Petitioner's claims (Ex. 12). Although Petitioner filed a notice of appeal, he did not file a supporting brief (Ex. 13). Nevertheless, Florida's Second District Court of Appeal affirmed the post-conviction court's denial of Petitioner's Rule 3.850 motions (Ex. 15).

On February 26, 2014, Petitioner filed a motion to correct an illegal sentence (Ex. 17). The post-conviction court denied the motion, and Florida's Second District Court of Appeal affirmed without a written opinion (Ex. 22); Scott v. State, 44 So. 3d 590 (Fla. 2d DCA 2010).

Petitioner timely filed the instant petition on February 8, 2016 (Doc. 1).

## II. Legal Standards

### a. The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). Notably,

a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Wilson v. Corcoran</u>, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. <u>White</u>, 134 S. Ct. at 1702; <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." <u>Marshall v. Rodgers</u>, 133 S. Ct. 1446, 1449 (2013) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a

rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016), <u>cert granted Wilson v. Sellers</u>, 137 S. Ct. 1203 (Feb. 27, 2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. <u>Wilson</u>, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

### b.   Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of

counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### c.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270,

275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. <u>Coleman</u>, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged

constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. Analysis

Petitioner raises nine claims in his petition. He contends that the trial court erred when it: (1) denied his motion for a judgment of acquittal; (2) allowed the state to introduce the prior consistent statements of two child witnesses; and (3) denied his request to present evidence that the child's mother had abused the victim (Claims One, Two, and Three). He contends that trial counsel ("Counsel") was ineffective for: (4) failing to call the victim's mother as an alibi witness; (5) failing to impeach witness Cynthia Morant; (6) failing to acquire a third expert witness; (7) failing to prove that Petitioner was actually innocent; and (8) making cumulative errors (Claim Four – Eight). In his last claim, Petitioner asserts that his consecutive sentences for aggravated child abuse and manslaughter violate the Fifth Amendment's proscription against double jeopardy (Claim Nine) (Doc. 1 at 4-28). Each claim will be addressed separately.

### a.   Claim One

Petitioner asserts that the trial court erred when it failed to grant his motion for a judgment of acquittal (Doc. 1 at 5). Specifically, Petitioner argues:

> When a case is based solely on circumstantial evidence, as in the instant case, a special standard of review of the sufficiency of the evidence applies, to wit:  the evidence must be inconsistent with any reasonable hypothesis of innocence for the conviction to be sustained.

- 11 -

(Doc. 1 at 5). Petitioner claims that the medical doctors testified that the victim died as a result of blunt force trauma to his stomach, and there was no direct evidence showing that Petitioner ever struck the child in the stomach, and he (Petitioner) never admitted to killing the child.  Id.

Respondents urge that Claim One is unexhausted because, while Petitioner raised a judgment of acquittal claim at trial and on direct appeal, he did not present the federal nature of Claim One to the state court (Doc. 18 at 10-11).  Indeed, a review of Petitioner's brief on direct appeal shows that he framed his claim and argument in terms of state law only without making reference to the United States Constitution, federal law, or even federal cases.  Specifically, his brief on direct appeal repeated the instant argument that "[w]hen a case is based solely on circumstantial evidence, as the instant case is, a special standard of review of the evidence applies.  The evidence must be inconsistent with any reasonable hypotheses of innocence for the conviction to be sustained." (Ex. 5 at 24) (citing State v. Law, 559 So. 2d 187, 188 (Fla. 1989); P.M.M. v. State, 884 So. 2d 418, 419-20 (Fla. 2d DCA 2004)).  Petitioner's state law argument leaves § 2254(b)(1)'s exhaustion requirement unsatisfied.  Duncan, 513 U.S. at 365-66.

For a habeas petitioner to fairly present a federal claim to state courts:

It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (emphasis added) (internal citations omitted). As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal citation omitted).

In his reply, Petitioner argues that this claim is exhausted because he needed only to present the substance of his claims to the state courts (Doc. 23 at 8). This is wrong. The Supreme Court has made clear that a prisoner does not exhaust federal claims merely by raising similar state claims. Picard v. Conner, 404 U.S. 270, 277-78 (1971). Moreover, the legal standard relied

upon by Petitioner in his brief is peculiar to Florida law.[3] The federal sufficiency of the evidence standard, set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) does not include a requirement that cases turning on circumstantial evidence exclude every reasonable hypothesis of innocence. <u>See</u> <u>United States v. Herrera</u>, 931 F.2d 761, 763 (11th Cir. 1991) (evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt) (citations omitted). Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Therefore, in addition to being unexhausted,

---

[3] While Florida may apply the <u>Jackson</u> standard in resolving an ordinary sufficiency claim, <u>see</u> <u>Melendez v. State</u>, 498 So.2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," <u>Thorp v. State</u>, 777 So.2d 385, 389 (Fla. 2000) (quotation omitted). It is a rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." <u>Id.</u> (quotation omitted); <u>Lowe v. State</u>, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt"). This is the argument Petitioner made in his appellate brief (Ex. 5). <u>See</u> discussion <u>infra</u> note 4.

Claim One is procedurally barred, and is dismissed under 28 U.S.C. § 2254(b)(1).[4]

### b. Claim Two

Petitioner asserts that the trial court erred by allowing the state to introduce prior consistent statements of the victims' siblings through the testimony of police detectives (Doc. 1 at 11). Petitioner states that Witness Detective Cunningham was questioned as to what the victim's brother told her about

---

[4] Even had Petitioner not relied upon Florida's circumstantial evidence standard, and simply challenged the sufficiency of the evidence under the standard applied in non-circumstantial cases (which is the same as the federal standard), his argument would still have been insufficient to alert the state court to a federal claim, in light of his failure to reference the federal Constitution or any federal law, and his failure to cite any state cases relying on federal law. See Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845-46 (11th Cir. 2008) (same); Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689 (11th Cir. 2011) (same); but see Mulinix v. Sec'y for Dep't of Corr., 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard); compare Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 462 (11th Cir. 2015) (casting doubt on Mulinix, stating "We think it far more straightforward to simply require that when petitioners intend to bring a federal claim, they say so, in words or substance. We also do not think that this requirement places a particularly onerous burden on state prisoners, who need only indicate to the state courts that they intend to raise a federal claim.").

Petitioner hitting the victim in the chest (Doc. 1 at 11). When Counsel objected on hearsay grounds, the trial court ruled that it was not hearsay under Rule 90.801(2)(b) of the Florida Evidence Code because the brother had already testified and had been questioned about his credibility. Id. Witness Lieutenant Urraro was similarly questioned about statements the victim's sister made, and Counsel was again overruled on the ground that the testimony concerned a prior consistent statement. Id. at 12. Petitioner now argues:

> The State's argument that the hearsay statements were somehow admissible pursuant to Section 90.801(2)(b), Fla. Stat., was incorrect. Section 90.801(2)(b) excludes from the definition of hearsay a prior consistent statement of a witness who testifies at trial and is subject to cross-examination concerning the statement when the statement is offered to rebut an express or implied charge of improper influence, motive, or recent fabrication. There was no such express or implied charge made by defense counsel in this case. The defense was that the charges against the Petitioner were fabricated from day one, not that the children had recently fabricated the allegations.

(Doc. 1 at 12). Respondents urge that Claim Two is unexhausted because, as with Claim One, Petitioner did not assert any federal component to the evidentiary challenge by citing to controlling federal law on this point (Doc. 18 at 19). A review of the record supports Respondent's argument.

When Counsel objected to the children's testimony at trial, he did not cite to any federal authorities or raise a federal due process issue (T. at 901-05, 1139-40).[5]  In his brief on direct appeal, Petitioner raised this claim in terms of state evidentiary law only (Ex. 5 at 36-43).  Therefore, Petitioner's instant challenge to the admission of the children's statements was not exhausted in state court.  Petitioner does not show cause for his failure to exhaust, nor has he presented new evidence that a fundamental miscarriage of justice occurred.  Consequently, Claim Two is procedurally barred and cannot be considered by this Court.

Moreover, Petitioner has not directed the Court to a Supreme Court case holding that the admission of a child's prior consistent statement is unconstitutional.  Petitioner now urges that the state court's denial of this claim was contrary to Tome v. United States, 513 U.S. 150 (1995) (Doc. 3 at 23).  However, Tome explicitly limited its holding "to the requirements for admission under [Federal] Rule [of Evidence] 801(d)(1)(B)." 513 U.S. 167.  Tome, therefore, did not announce a constitutional principle that federal courts can apply to a § 2254 habeas petition.  Even if

_____

[5] To the extent Petitioner now argues that the trial court erred under Florida law when it denied his motion for a judgment of acquittal, such argument is not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

Claim Two were exhausted, Petitioner would not be entitled to federal habeas corpus relief. Accordingly, in addition to being dismissed as unexhausted, Claim Two is denied on the merits. 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### c. Claim Three

Petitioner asserts that the trial court erred because it did not allow him to present "reverse Williams rule" evidence suggesting that the victim may have been abused by his mother (Doc. 1 at 14-15).[6] Specifically, Petitioner proffered the testimony of Dr. Teresa Stevens, the victim's pediatrician, and Janice Jones, the child's grandmother. These witnesses said that the victim told them that his mother caused bruises on his body. Id. He

---

[6] "Reverse Williams rule" evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime. See McDuffie v. State, 970 So. 2d 312, 324 (Fla. 2007). The defendant must demonstrate a "close similarity of facts, a unique or 'fingerprint' type of information" for the reverse Williams rule evidence to be admissible. See White v. State, 817 So. 2d 799, 806 (Fla. 2002) (quoting State v. Savino, 567 So. 2d 892, 894 (Fla. 1990)). If a defendant's purpose is to shift suspicion from himself to another person, then evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense. In other words, uncharged offenses and juvenile adjudications would not be admissible. See Murphy v. State, 930 So. 2d 794, 796 (Fla. 1st DCA 2006); see also Florida Statute § 90.610(1)(b).

proffered the testimony of Latroyer Lamar that she had seen the child's mother hit him with a belt on one occasion.  Id.  The trial court determined that the testimony was not admissible as reverse Williams rule evidence (T. at 1382).  Specifically, the Court noted:

> The one statement made to Dr. Stevens that, "My mama did it"; the statement to Ms. Jones that, "My mama did it," by a three-year-old with no inquiry, no challenge to it, no determination of its veracity by either one of those cannot assist the Court in making a clear and convincing finding that [the child's mother] committed those acts that the defense seeks to admit.
>
> So based upon the lack of clear and convincing evidence to establish that first component, I find the reverse Williams Rule will not apply in this case and I will not allow the evidence; and that's even without the necessity – which it basically eliminates the necessity of the Court making a balancing consideration of the relevancy versus the potential prejudice.

(T. at 1382).  Petitioner argues that he should have been allowed to present the evidence because it may have established reasonable doubt of his guilt by pointing the finger at a different perpetrator (Doc. 1 at 15).

Once again, in his brief on appeal (and in his instant pleadings), Petitioner argues only that the trial court erred under Florida law by refusing to admit the evidence that the victim may have been abused by his mother.  As such, the constitutional

dimension of this claim is unexhausted. See discussison supra Claims One and Two.

Moreover, Petitioner has not presented a Supreme Court case holding that the exclusion of reverse Williams rule evidence violates due process. The Supreme Court has never "questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability — even if the defendant would prefer to see that evidence admitted." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). Accordingly, in addition to being dismissed as unexhausted and procedurally barred, Claim Three does not warrant federal habeas relief under 28 U.S.C. § 2254(d) and is denied on the merits.

### d. Claim Four

Petitioner asserts that Counsel rendered ineffective assistance when he failed to call the victim's mother, Nicole Brewington, as an alibi witness at trial (Doc. 1 at 16-18). He asserts that Brewington (who was a co-defendant) would have testified that the victim was sick prior to Petitioner arriving at her house and that she did not see Petitioner abuse the child. Id. He asserts that Brewington would have testified that the child had been hit by a bicycle, that the child was malnourished, or that the child could have been injured by playing roughly with his older brother. Id. Petitioner raised this claim in his Rule

3.850 motion, and the post-conviction court denied it on the ground

that Petitioner could not demonstrate prejudice:

> In his first allegation, Defendant alleges
> that trial counsel was ineffective for failing
> to call alibi witness, Nicole Brewington, who
> was a co-defendant and the victim's mother.
> Defendant also alleges that she would have
> testified that the victim had been vomiting
> during the ten days prior to Defendant's
> arrival at her house. Defendant further
> alleges that Brewington would have testified
> that she never witnessed any abusive behavior
> by Defendant toward the victim and that an
> older sibling, Jack Nash, was abusing the
> victim. Furthermore, Defendant alleges that
> if Brewington would have testified, she could
> have been asked whether or not she knew that
> the victim was run over by a bicycle as his
> sister Jessica Nash testified.
>
> As the State points out, Jack and Jessica Nash
> did testify about the body slamming and
> bicycle incident at trial. Furthermore, both
> medical experts, Dr. Hamilton and Dr. Daniel,
> were asked whether the body slamming or the
> bicycle incident could have caused the
> victim's injuries and led to his death.
> Because all of this evidence was presented to
> the jury, Defendant cannot show how he was
> prejudiced. Furthermore, the fact that
> Defendant did not abuse the victim prior to
> this incident was undisputed at trial.
> Lastly, Defendant's allegation that
> Brewington would have testified that the
> victim was sick prior to Defendant's arrival
> is refuted by the record. Because her
> testimony would not have provided Defendant an
> alibi, Defendant has failed to show how he was
> prejudiced by this omitted testimony or how
> counsel was ineffective.

(Ex. 12) (internal citations to the record omitted). Petitioner

filed a notice of appeal of the denial of his Rule 3.850 motion

(Ex. 13). Florida's Second District Court of Appeal affirmed (Ex. 15). Accordingly, Claim Four is exhausted.[7] The silent affirmance of the post-conviction court's ruling is entitled to deference, and the Court must determine whether any arguments or theories could have supported the state appellate court's decision. Wilson, 834 F.3d at 1235.

Petitioner offers nothing to dispute the factual findings of the post-conviction court or to support his claim that Brewington would have testified as Petitioner now suggests. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); accord Dottin v. Sec'y, Dep't of Corr., No. 8:07-CV-884-T-27MAP, 2010 WL 3766339, at *6 (M.D. Fla. Sept. 16, 2010). Accordingly, the post-conviction court's rejection of this claim was neither contrary

---

[7] Respondent asserts that Claims Four through Eight are unexhausted because Petitioner did not file a brief on appeal of his Rule 3.850 motion. The Court disagrees. There was no hearing held on Petitioner's motion. See Fla. R. App. P. 9.141(b)(2)(C) (providing that briefs are "not required" when a petitioner appeals from summary denial of a Rule 3.850 motion). However, even if the claims are unexhausted, the Court may deny a claim on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in state court." 28 U.S.C. § 2254(b)(2).

to, nor based upon an unreasonable application of <u>Strickland</u>. Petitioner is not entitled to habeas relief on Claim Four.

### e. Claim Five

Petitioner asserts that Counsel rendered ineffective assistance when he failed to impeach witness Cynthia Morant with the testimony of witness Rebecca Hamilton (Doc. 1 at 19-20). Specifically, Petitioner asserts that Child Welfare Case Manager Morant testified that the victim, who was wearing no shorts or shirt when she saw him, had no visible bruises on the last day she visited him, which was only a few days before he died. <u>Id.</u> He asserts that Dr. Rebecca Hamilton testified that, when she autopsied the victim, she found evidence of bruising that should have been visible when Morant saw him. <u>Id.</u> Petitioner argues that Counsel should have impeached Morant's testimony by showing that it "conflicted with proven science" and that the existence of bruises on the victim's body four days prior to his death would have precluded Petitioner being the person who inflicted the injuries that killed him. <u>Id.</u> at 20.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it on both prongs of <u>Strickland</u>:

> In the second allegation, Defendant alleges that trial counsel was ineffective for failing to properly impeach Cynthia Santiago-Morant, who was the Children's Network Child Welfare Case Manager. Specifically, Defendant alleges that Santiago-Morant's testimony, that she saw no bruises on the victim four

days prior to the incident, was a lie and in contradiction to Hamilton's testimony, who was the pathologist that performed the autopsy on the victim. Defendant further alleges that if counsel would have questioned Santiago-Morant's testimony, the jury would have decided in his favor.

However, a review of Dr. Hamilton's testimony does not support Defendant's allegation, in that, she never testified about bruises on the skin of the victim. Therefore, counsel could not have used Dr. Hamilton's testimony to impeach Santiago-Morant's testimony. Moreover, impeachment of this type is not by direct questioning of the person whose testimony you are trying to impeach, but by presenting the conflicting testimony of other witnesses. <u>See</u> § 90.806, Fla. Stat. Because there was not any conflicting evidence on this issue, counsel could not have been ineffective for failing to raise a meritless issue.

(Ex. 12) (internal citations to the record omitted). Florida's Second District Court of Appeal affirmed (Ex. 15). Accordingly, Claim Five is exhausted.

Petitioner does not explain how the post-conviction court's adjudication of this claim was contrary to <u>Strickland</u> or based upon an unreasonable determination of the facts. Contrary to Petitioner's assertions, Dr. Hamilton did not testify that the bruising on the victim's body was present when Santiago-Morant visually evaluated him. She testified that it was difficult to discern the age of a bruise, that the child was dark-skinned (making discoloration difficult to see), and that DCF workers sometimes don't notice bruises on children (T. at 681, 694, 718).

She also stated that the blows that caused the bruising were not necessarily the same blows that killed the victim because the victim died of an infection caused by blunt force trauma to his stomach that probably occurred sometime after the victim was observed by Santiago-Morant (T. at 713).

Dr. Hamilton's testimony was not inconsistent with Santiago-Morant's testimony that she did not observe any bruising on the victim's skin when she saw him several days before he died (T. at 626). Accordingly, reasonable competent counsel could have decided against attempting to further question the witness about the bruising on the child's body. Moreover, the jury heard both Hamilton's and Santiago-Morant's testimony, so Petitioner cannot demonstrate that he was prejudiced by Counsel's alleged failure to point out that the victim had multiple bruises on his body when he died. Claim Five fails to satisfy either Strickland prong, and Petitioner is not entitled to federal habeas relief.

### f.    Claim Six

Petitioner asserts that Counsel was ineffective for failing to acquire an expert witness to testify that some of the bruises on the victim's body were older than others (Doc. 1 at 21). Specifically, Petitioner argues that neither of the doctors who testified at his trial "performed stain tests on subcutaneous area which would have proven certain bruises were older than others." Id. Petitioner urges that, had an expert determined that some of

the bruises occurred earlier, "the jury would have learned that the ongoing physical abuse of Zahid Jones could have caused the malnourished child to expire." Id. at 22.

Petitioner raised this claim in his Rule 3.850 motion, and the trial court rejected his argument, noting that the two experts who testified both agreed that the victim's cause of death "was peritonitis due to blunt force trauma to the victim's abdomen." (Ex. 12). The Court noted that the testing Petitioner urges he needed could not determine the exact timing of the victim's injuries and "it is highly unlikely that testimony from a third expert would have changed the outcome of the proceedings." Id. Florida's Second District Court of Appeal affirmed (Ex. 15). Accordingly, Claim Six is exhausted.

Petitioner has not established the existence of an expert who would have testified that the blows that caused the perforation of the victim's intestines occurred when Petitioner could not have struck them, nor has he established that such a witness would have been available to testify. "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with his claims is mere speculation and does not entitle him to habeas relief." Finch v. Sec'y, Dept of Corr., 643 F. App'x 848, 852 (11th Cir. 2016); see also Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) ("Th[e] prejudice burden is heavy where the petitioner alleges ineffective

assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'") (quoting <u>United States v. Guerra</u>, 628 F.2d 410, 413 (5th Cir. 1980)).

Petitioner has not shown that the post-conviction court's adjudication of this claim was contrary to, or based upon an unreasonable application of <u>Strickland</u>. Claim Six is denied.

### g.    Claim Seven

Petitioner asserts that Counsel was ineffective for "failing to subject the State's case to adversarial testing where the State failed to meet its burden of proof when Petitioner is actually innocent." (Doc. 1 at 23). Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court rejected it on the ground that Petitioner actually sought to raise a sufficiency of the evidence claim (Ex. 12). The post-conviction court determined that such a claim was procedurally defaulted because it should have been raised on direct appeal. <u>Id.</u> Alternatively, the post-conviction court determined that the claim was meritless. <u>Id.</u> Florida's Second District Court of Appeal affirmed (Ex. 15).

Petitioner does not rebut (or acknowledge) the post-conviction court's conclusion that "[Petitioner's] argument is an attempt to reweigh and re-analyze the sufficiency of the evidence, which should have been raised in direct appeal and is not cognizable in a rule 3.850 motion." (Ex. 12). Under the doctrine

of procedural default, a federal court will not review the merits of claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule.  <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).  Petitioner does not offer cause for his failure to raise this claim on direct appeal.  To the extent he urges that he is subject to the manifest injustice exception to the procedural bar, he does not offer any new evidence demonstrating actual innocence.  Accordingly, Claim Seven is unexhausted.

Even had this argument been raised as a proper ineffective assistance claim, it is impossible to discern exactly what Counsel is alleged to have done wrong.  Petitioner points to evidence and testimony that <u>was</u> actually developed during his trial and urges that "trial counsel should have capitalized on and argued" that the state's cases had weaknesses (Doc. 1 at 24).  In other words, Petitioner offers the argument that, in light of all the evidence offered at trial, Counsel was ineffective because he was unable to convince the jury that Petitioner was innocent.  A review of Counsel's lengthy closing argument shows that Counsel questioned the veracity and memories of the state's witnesses; suggested that the victim's trauma was caused by a bicycle accident or a body slam from his older brother; argued that Petitioner had not been present in the home until after the blunt force trauma leading to the fatal infection had occurred; suggested that some of the child's bruising could have occurred during Petitioner's

administration of CPR; pointed to witnesses who noted that Petitioner liked and was nice to the children; and argued that the victim's mother could have caused his injuries (T. at 1826-57).

In every case, a trial lawyer "could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (quoting <u>Burger v. Kemp</u>, 483 U.S. 776 (1987)). That Petitioner would have focused the jury's attention on different evidence or stressed different arguments in closing does not compel a conclusion that Counsel's performance was deficient. Rather it suggests only a difference of opinion, insufficient to support an ineffective assistance claim.

In addition to being dismissed as procedurally barred, Claim Seven is denied on the merits. 28 U.S.C. § 2254(b)(2).

### h.  Claim Eight

Petitioner asserts that the cumulative effect of Counsel's deficient performance resulted in prejudice (Doc. 1 at 26). This Court need not determine whether, under current Supreme Court precedent, cumulative error claims can ever succeed under 28 U.S.C. § 2254(d). Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors

deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012)(refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009)(noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805 (11th Cir. 2014)(same). Petitioner is not entitled to federal habeas relief on Claim Eight.

### i.  Claim Nine

Petitioner asserts that his convictions for both aggravated child abuse and manslaughter of a child violate the prohibition against double jeopardy (Doc. 1 at 28). Petitioner raised this claim in a Rule 3.800 motion to correct sentencing in state court (Doc. 17), and the post-conviction court rejected the claim on the

merits, and as incorrectly raised in a Rule 3.800 motion (Doc. 18).

Respondent urges that Petitioner's multiple convictions do not violate double jeopardy because the offenses are separate for purposes of multiple punishments under the "same elements" rule originally established by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932) (Doc. 18 at 41). Upon review of Blockburger and other relevant law, the Court agrees that Petitioner has not demonstrated how the state court's rejection of this claim was contrary to clearly established federal law.

The Double Jeopardy Clause of the United States Constitution protects "against multiple punishments for the same offense." Ohio v. Johnson, 467 U.S. 493, 498 (1984). To determine whether a double jeopardy violation has occurred based on multiple convictions stemming from the same conduct, but pursuant to separate statutes, the Court must undertake a two-part analysis. See Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996). First, the Court must determine "whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct." Id. If a clear indication exists of such legislative intent, the double jeopardy bar does not apply. Id. However, "[i]f there is no clear indication of legislative intent to impose cumulative punishments,

[courts] examine the relevant statutes under the same-elements test of Blockburger." Id. Pursuant to Blockburger's "same-elements" test, "if each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment." Id.[8]

To prove the crime of aggravated child abuse, the state must prove that the defendant committed aggravated battery on a child; willfully tortured, maliciously punished, or willfully and unlawfully caged a child; or knowingly or willfully abused a child and in so doing caused great bodily harm, permanent disability, or permanent disfigurement to the child. Fla. Stat. § 827.03 (2007). To prove the crime of manslaughter of a child, the state must prove that the defendant caused the death of a person under the age of eighteen by culpable negligence. Fla. Stat. § 782.07 (2007).[9]

Thus, manslaughter (and not aggravated child abuse) requires proof of the victim's death resulting from culpable negligence whereas aggravated child abuse (and not manslaughter) requires

---

[8] In the instant case, it is not clear from the statutory language of the relevant statutes whether the Florida legislature intended to impose cumulative punishments for aggravated child abuse and manslaughter of a child. As such, the Court will examine the statutes pursuant to Blockburger's "same-elements" test.

[9] Culpable negligence under this statute occurs when a defendant "neglects a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child." Fla. Stat. § 827.03(2)(b).

proof of intentional battery or abuse. Florida's Fifth District Court of Appeal addressed this issue in Koenig v. State:

> Child abuse is not subsumed in a charge of aggravated manslaughter of a child. Further, child abuse and the manslaughter charge do not pass the same-elements test. Manslaughter requires the death of a child, but child abuse does not. Child abuse requires, by definition, an intentional act; the manslaughter charge, by its terms, requires culpable negligence and not intent. Indeed, a death occurring as a result of child abuse, aggravated or simple, would be either first or third degree felony murder and not aggravated manslaughter of a child.

757 So. 2d 595, 596 (2000). Petitioner was convicted of two separate crimes with independent elements. Therefore, Petitioner was not subjected to multiple punishments for the same offense, and no double jeopardy violation occurred in his case. Claim Nine is denied pursuant to 28 U.S.C. § 2254(d)(1).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability[10]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute

---

[10] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal as a pauper.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2. Claims One, Two, Three, and Seven of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Kashon Scott (Doc. 1) are **DISMISSED** with prejudice as unexhausted. Claims Two, Three, and Seven are alternatively denied on the merits. The remaining claims are **DENIED** on the merits.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___24th___ day of October, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record